IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY T. WATSON,

    Plaintiff,

v.     Civil No. PJM 14-1335

BANK OF AMERICA, N.A.

    Defendant.

## MEMORANDUM OPINION

Anthony T. Watson, *pro se*, has brought this action against Bank of America, N.A., ("BANA") as successor by merger to BAC Home Loans Servicing L.P. (formerly known as Countrywide Home Loans Servicing L.P.).

Although the Complaint contains no numbered counts, its gravamen seems to challenge the validity of Watson's residential mortgage and his obligations under it. He has also added various statutory and common law claims.

BANA has filed a Motion to Dismiss (Paper No. 8). For the reasons stated below, BANA's Motion to Dismiss is **GRANTED**, and the Complaint is **DISMISSED**.

### I.

The Complaint is largely incoherent and devoid of material factual allegations. Despite these deficiencies, the Court has been able to glean certain basic facts from the filings submitted in connection with BANA's Motion to Dismiss.[1]

Watson entered into a mortgage agreement with the original lender, American Brokers Conduit, on May 16, 2007, with respect to a property located at 9424 Michael Drive, Clinton,

---

[1] The Court considers these facts only to establish a background; these filings are not construed to be "well-pleaded allegations" by Plaintiff for the purposes of a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

MD 20735. Compl. at 11. The accompanying promissory note was in the amount of $252,000. *Id.* at 30. American Brokers Conduit sold the note to Countrywide (now BANA). *Id.* at 10. The property is currently valued at approximately $219,200. BANA has proposed that Watson execute a modified note in the amount of $337,649, *id.* at 30, which Watson has declined to do.

Following Watson's extensive default on the existing note, BANA attempted to foreclose on Watson's property. On or about December 30, 2011, Watson filed for Chapter 7 Bankruptcy, listing the mortgage loan at issue as secured debt owed to BANA. *See* Compl. at 20, 31. BANA participated in the Bankruptcy proceeding, and the Bankruptcy Court granted BANA's Motion for Relief From Automatic Stay, allowing BANA to continue with its foreclosure proceedings. *See* Order Granting Motion, *In re Watson*, No. 11-35141 (Bankr. D. Md. March 21, 2012). Watson ultimately received a discharge. *See* Compl. at 8, 21; *see also* Order Discharging Debtor, *In re Watson*, No. 11-35141 (Bankr. D. Md. Apr. 10, 2012). Watson's discharge does not, however, affect the status of BANA's underlying lien on his real property. *See In re Hamlett*, 322 F.3d 342, 347 (4th Cir. 2003).

In this proceeding, Watson attempts to challenge the validity of his mortgage. He suggests that he cancelled the mortgage within an allowable 72-hour period, on May 19, 2007. Compl. at 14. He also alleges that the notarization on the deed of trust is invalid, *id.* at 12, that it was not recorded properly, *id.* at 15, and that his signature on the recorded deed and the loan note are forgeries, *id.* at 13, 16. Watson suggests that BANA's use of these documents constituted both fraud and injurious falsehood when they were filed with the State of Maryland and in the Circuit Court for Prince George's County. *Id.* at 11. Furthermore, Watson suggests that the assignment of his mortgage to BANA (then Countrywide) is likewise invalid. As to this last claim, he alleges that, because the promissory note was endorsed "without recourse," it is invalid

under the Maryland Commercial Code. *Id.* at 17. Second, he claims that the Mortgage Electronic Registration System ("MERS") lacked the authority to assign the Deed of Trust. *See* Compl. at 35-36.

Watson has alleged other causes of action with varying levels of specificity. He alleges that BANA violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et. seq.*, because it "sent paper work to the Plaintiff that was outdated with false statements and information; [BANA] did not make any references in those documents as to the requirements by RESPA; the Defendant failed to comply." *Id.* at 10. He also alleges that BANA violated the Fair Housing Act, 42 U.S.C. § 3601, *et. seq.*

Most importantly, Watson asks to be absolved of any obligations under the mortgage, so that he may "enjoy the freedom and comforts of his home and be free of any attached claims to his resident property by [BANA] or by any creditor." *Id.* at 38. That is, he wants to have his house free and clear of a mortgage, plus he seeks $10 million in damages, with interest and costs.

BANA argues that all of Watson's claims should be dismissed pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure because the Complaint fails as a matter of law. Additionally, it argues that many of the claims are barred by *res judicata*, and that Watson lacks standing to assert others. To the extent Watson's Complaint contains any colorable claims, BANA argues, they are not sufficiently pled to warrant relief. The Court, with slight reframing of BANA's arguments, agrees.

II.

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards," requiring only that a plaintiff submit a "short and plain statement of the claim showing that [he] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing Fed. R. Civ. P. 8(a)(2)). If

pleadings allege fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under the heightened pleading standard of Rule 9(b), "[t]hese circumstances are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

While federal courts must liberally construe a *pro se* litigant's claims, this requirement "does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012); *see also Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 722 (4th Cir. 2010) (observing the Fourth Circuit considers liberal construction of a complaint is particularly warranted where a *pro se* litigant alleges civil rights violations). The Fourth Circuit has noted that "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir.1985), *cert. denied*, 475 U.S. 1088 (1986)).

### III.

The Court addresses Watson's various allegations.

**A. Challenges to the Validity of the Mortgage are Barred by Judicial Estoppel**

The Court need not evaluate the plausibility of Watson's allegations challenging the validity of his mortgage under Rule 12(b)(6). These challenges are barred by judicial estoppel since Watson did not raise these claims in his Chapter 7 bankruptcy proceeding.[2] *See* Chapter 7 Voluntary Petition, *In re Watson*, No. 11-35141 (Bankr. D. Md. Dec. 30, 2011).

"Judicial estoppel is a principle developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court." *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir.2007). "As an equitable doctrine, judicial estoppel is invoked in the discretion of the district court and with the recognition that each application must be decided upon its own specific facts and circumstances." *King v. Herbert J. Thomas Mem. Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998). For judicial estoppel to apply: "(1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently." *Id.*

In a bankruptcy proceeding, a debtor has a continuing affirmative obligation to disclose all property of the estate. 11 U.S.C. § 541(a). This property includes any possible causes of action the debtor may have. *See In re Bogdan*, 414 F.3d 507, 512 (4th Cir. 2005). If a debtor fails to disclose a claim to the bankruptcy court, he may be judicially estopped from pursuing that claim. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 207–08 (5th Cir. 1999). Watson's failure to disclose to the bankruptcy court his claims regarding the validity of BANA's mortgage

---

[2] BANA argues that these claims are barred by *res judicata*. Though the end result is essentially the same, judicial estoppel is the applicable doctrine.

constituted a factual representation that no such claim existed—a representation that was accepted by the bankruptcy court when it discharged his debts and closed the case, and one that is inconsistent with his current position. Thus, the first three prongs of the judicial estoppel test are satisfied.

As to the fourth prong, "[i]n cases involving bankruptcy, courts have developed a fairly consistent standard, in the absence of direct evidence of intent, for inferring whether a debtor acted intentionally or inadvertently in omitting a potential claim from a bankruptcy petition." *Calafiore v. Werner Enters., Inc.*, 418 F. Supp. 2d 795, 798 (D. Md. 2006). Specifically, "a debtor's failure to satisfy [his] statutory duty to disclose is 'inadvertent' only when, in general, the debtor lacks knowledge of the undisclosed claims or has no motive for its concealment." *Id.* (quoting *Kamont v. West*, 258 F. Supp. 2d 495, 500 (S.D. Miss. 2003)). "If his undisclosed claim would have added assets to the bankruptcy estate . . . he will usually be deemed to have had a motive to conceal those claims." *Id.*; *see also Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001) ("Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset.").

The fourth prong is clearly established. Watson had knowledge of the claims he now alleges. As but one example, he now claims that the mortgage is invalid because he rescinded it within an allowable 72-hour in May 2007. Yet he never raised this argument, nor any others regarding the mortgage's validity, for the years that he remained in the 9424 Michael Drive home and received mortgage statements. Moreover, the claims, if successful, would add $10

million in assets to the estate. Accordingly, Watson had a motive to conceal these claims to prevent that money from being disbursed to his creditors.

Because all the elements are satisfied, the Court concludes that any and all challenges to the validity of the mortgage are barred by judicial estoppel.

Even if the Court were to consider the merits of Watson's allegations, they are not, as required, plausible under Rule 12(b)(6), nor do any of his fraud allegations satisfy the heightened pleading requirements of Rule 9(b). These claims are therefore dismissed.

### B. Watson Lacks Standing to Challenge the Mortgage Assignment

Similarly, the Court need not evaluate Watson's challenge to the assignment of his mortgage to BANA since he lacks standing to challenge the assignment.

Generally speaking, an obligor under a contract, including a mortgagor contract, lacks standing to challenge the assignment of the underlying obligation by the obligee to a third-party. *See Quattlebaum v. Bank of America, N.A.*, 2015 WL 1085707, at *4 (D. Md. Mar. 10, 2015) ("What the lender chooses to do with [a mortgage]—whether to keep it or sell it to another financial institution—is a decision [the mortgagor] has no standing to challenge."). Although Watson is a party to the underlying mortgage, the assignment of that mortgage to BANA is a separate contract to which he is neither a party nor an intended beneficiary. Watson's duties under the mortgage remain the same, and he has no interest in the assignment. He therefore lacks standing to challenge the validity of the assignment. These claims are also dismissed.

### C. RESPA Claim

Watson alleges that, on three separate occasions, BANA promised to respond to his questions regarding the mortgage at issue and failed to do so. *See* Compl. at 10, 25. Given the Complaint's lack of detail, the Court assumes Watson is referring to the RESPA requirement that

loan servicers must acknowledge receipt of a borrower inquiry within five days in writing, and provide a written response to the borrower's qualified written request ("QWR") within thirty days. *See* 12 U.S.C. § 2605.[3] But Watson has failed to provide any details that would enable the Court to evaluate the content of any such inquiries, including information as to whether any QWRs were actually submitted to BANA, and ultimately whether BANA failed to perform its duty under RESPA. Indeed, Watson tacitly acknowledges that he did not submit an inquiry that met the QWR standard, notwithstanding which BANA actually responded in a manner that complies with RESPA requirements. *See* Compl. at 25. ("[BANA] promised a review as required by RESPA in responding to [Watson's] Complaint. [BANA] did provide the services of an Attorney to answer [Watson's] concerns but rescinded on that offer without notice before [Watson] had a chance to put together a proper questionnaire. . . . [BANA] did not call it a response as required by RESPA but stated that they believed that it had answered [Watson'] concerns.").

Consequently, the RESPA claim must be dismissed. *See Twombly*, 550 U.S. at 557 (reasoning a "complaint [does not] suffice if it tenders naked assertion[s] devoid of further factual enhancement.").

### D. Modifications under HAMP

Watson alleges that he "is in a trial modification with [BANA], but there is a problem . . . BANA has recently responded to the Plaintiff that this is [BANA's] modification and if the

---

[3] To trigger the loan servicer's RESPA duty to respond, the borrower inquiry must satisfy the standard for a QWR. Under RESPA, a QWR

> shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e).

Plaintiff does not like it, do not sign for it." Compl. at 25. In its Motion to Dismiss, BANA understands this allegation to assert a cause of action arising under the Home Affordable Modification Program ("HAMP"), and argues that HAMP does not create a private right of action for individual borrowers to enforce its guidelines against lenders. *See Sheard v. Bank of America, N.A.*, No. PJM 11-3082, 2012 WL 3025119, at *3 (D. Md. July 23, 2012).

BANA's argument, more appropriately framed, is, "*[w]here a homeowner has not entered into any agreement under HAMP* . . . plaintiffs have no claim or cause of action to enforce HAMP guidelines on behalf of the federal government or as a third-party beneficiary of an SPA between the federal government and the mortgage servicer." *Bowers v. Bank of Am., N.A.*, 905 F. Supp. 2d 697, 701 (D. Md. 2012) (emphasis added); *see also Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 449 (D. Md.) (same).

Under HAMP, the federal government provides incentives to loan servicers to work with struggling mortgagors to modify existing loans. In doing so, "prospective borrowers enter into a standardized contract, called a Trial Period Plan ('TPP'), with lenders/servicers such as [BANA] for a three-month trial modification of the borrower's existing note and mortgage." *Ramos v. Bank of Am., N.A.*, No. CIV.A. DKC 11-3022, 2012 WL 1999867, at *1 (D. Md. June 4, 2012). The terms of "the TPP promises that if the borrower complies with the terms of the agreement and the borrower's representations continue to be true in all material respects, then the borrower will receive a permanent modification on the same terms." *Id.* It is when the homeowner enters into a TPP under HAMP that the homeowner may be able to create legally enforceable contract rights. *Goss*, 917 F. Supp. 2d at 449.

However, Watson's allegations, even construed liberally and viewed in a light most favorable to him, indicate that while there might have been discussion of a TPP with BANA, no

agreement was signed and enforceable. *See* Compl. at 25, 33 (indicating that "[BANA] has sent the Plaintiff terms for a permanent modification . . . . This is a fraudulent modification and it is Predatory Lending."). The absence of any agreement means, quite simply, that Watson has no private right of action under HAMP and his allegations regarding loan modification do not "plausibly give rise to an entitlement to relief" and must be dismissed. *Iqbal*, 556 U.S. at 664.

### E. Fair Housing Act

Finally, Watson alleges that BANA violated the Fair Housing Act ("FHA") by engaging in steering or targeting in mortgage lending and imposing discriminatory terms on him. *See* Compl. at 2-3, 8-9. To successfully allege discrimination in connection with a loan application, a complaint must state that "(1) the plaintiff is a member of a protected class, (2) the plaintiff applied for and was qualified for a loan, (3) the loan was rejected despite the plaintiff's qualifications, and (4) the defendants continued to approve loans for applicants with qualifications similar to those of the plaintiff." *Frison v. Ryan Homes*, No. CIV.A. AW-04-350, 2004 WL 3327904, at *5 (D. Md. Oct. 29, 2004).

Most of Watson's FHA allegations speak generally about the problems of predatory lending. *See* Compl. 8–9. To the extent he provides more specific allegations, those relate only to the original lender, American Brokers Conduit. *Id.* at 9. Watson fails to establish how BANA might in any way be responsible under the FHA for the actions of the original lender.[4] He has failed to plead facts sufficient to support a plausible claim for relief. *See Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007)

---

[4] This is not to say that Watson has alleged a plausible claim under the FHA against American Brokers Conduit, only that he has completely failed to make allegations under the FHA against BANA.

IV.

For the foregoing reasons, the Defendant's Motion to Dismiss (Paper No. 8) is **GRANTED**. The Complaint is **DISMISSED**.

A separate Order will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

March 25, 2015